UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

LYNN LOOK, JR., )
                )
 *Plaintiff,*          )
                )
v.                )
                )
CSC SERVICEWORKS, INC.,   )
                )
Serve:             )  Civil Action No.: 3:16CV57
                )
Registered Agent        )
CT Corporation System     )
4701 Cox Road, Suite 285    )
Glen Allen, Virginia 23060   )

## COMPLAINT

Plaintiff Lynn Look, Jr. (hereinafter, "Plaintiff" or "Look"), by counsel, files this Complaint against Defendant, CSC ServiceWorks, Inc. (hereinafter "Defendant"), and, in support thereof, states as follows:

### Nature of Claims

1. This is an action for equitable relief, declaratory relief, compensatory damages, and punitive damages to redress unlawful discriminatory and retaliatory practices during the course of, and in the termination of, Look's employment in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* (hereinafter, "ADA").

2. This is also an action for equitable relief, declaratory relief, compensatory damages, and liquidated damages to redress unlawful practices during the course of, and in the termination of, Look's employment in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.* (hereinafter, "FMLA").

3. Further, this is an action for equitable relief, declaratory relief, compensatory damages, and punitive damages to redress unlawful discriminatory practices during the course of, and in the termination of, Look's employment in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq.* (hereinafter, "ADEA").

### Jurisdiction, Venue, and Administrative Proceedings

4. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, 29 U.S.C. §2617, 42 U.S.C. §12117, 29 U.S.C. §626, and 29 U.S.C. §1132.

5. Look timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging discrimination on the basis of disability, age, and retaliation on or about April 16, 2015. Thereafter, Look filed an Amended Charge of Discrimination further asserting his claims of discrimination on the basis of disability, age, and retaliation on or about June 15, 2015. The EEOC issued Look a Right-to-Sue letter on November 5, 2015.

6. Look initiated this action within 90 days of the date that Plaintiff received the Right to Sue letter.

7. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §1391(b) and 29 U.S.C. §1132(e)(2). The actions complained of took place in this judicial district; evidence and employment records relevant to the allegations are maintained in this judicial district; Look would be employed in this judicial district but for the unlawful actions and practices of Defendant; and Defendant is present and regularly conducts affairs in this judicial district.

2

## Parties

8.  Look is a 61-year old male, who is a resident of Hancock, Maine. At all times relevant to the matters alleged herein, Look was an "employee" within the meaning of the ADA pursuant to 42 U.S.C. § 12111(4). Additionally, at all times relevant to the matters alleged herein, Look was an eligible employee within the meaning of the FMLA pursuant to 29 U.S.C. § 2611(a). Further, at all times relevant to the matters alleged herein, Look was an "employee" within the meaning of the ADEA pursuant to 29 U.S.C. §630(f).

9.  At all times relevant to the matters alleged herein, Look was a "person," and "qualified individual," with a disability within the meaning of the ADA.

10. Defendant, CSC ServiceWorks, Inc., is a laundry services and tire inflation and vacuum vending services company that provides services nationally, including areas throughout the Commonwealth of Virginia. Defendant is organized under the laws of Delaware with a principal office located in Plain View, New York. Defendant does business under the brand names Coinmach, Mac-Gray, Air Valet, Appliance Warehouse, ASI Campus Laundry Solutions, Super Laundry, Kwik Wash, SDI Laundry Solutions, AIR-serv, and Sparkle Solutions and employs more than 3,000 employees throughout the United States, Canada, and Europe.

11. Defendant, CSC ServiceWorks, Inc., at all times relevant hereto, was an employer engaged in an industry affecting commerce with more than 50 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year. Defendant is an "employer" within the meaning of 29 U.S.C. § 2611(4)(A) and is subject to the provisions of the FMLA. Additionally, Defendant is an "employer" within

the meaning of 42 U.S.C. § 12111(5)(A) and is subject to the provisions of the ADA. Further, Defendant is an "employer" within the meaning of 29 U.S.C. §630(b) and is subject to the provisions of the ADEA.

### Factual Allegations

12. Look incorporates the allegations in the preceding paragraphs as though fully set forth here.

13. Look was hired as a collector by Defendant's predecessor, Mac-Gray Corporation, in 2000. After undergoing various corporate changes, Defendant acquired Mac-Gray Corporation in January 2014. Notwithstanding the corporate transition, Look retained his position as a collector through December 30, 2014, when Defendant terminated Look's employment.

14. Look performed his duties in a competent and satisfactory manner during his employment with Defendant. He met or exceeded the legitimate expectations of Defendant.

15. In December 2010, Look injured his left knee when he slipped on ice while working for Defendant. Following his injury, Look was diagnosed with osteoarthritis, a medical condition that affects the breakdown of Look's knee joint cartilage and underlying bone and affects his major life activities, including standing and walking.

16. After the December 2010 work incident, Look had difficulty walking and standing for long periods.

17. Look's health condition constitutes a physical impairment, and there is a record of such impairment. Because Look's physical impairment substantially limits one

or more of his major life activities, Look is a person with a disability within the meaning of the ADA.

18. From December 2010 through the termination of his employment, Look was a qualified individual with a disability.

19. Look was able to perform the essential functions of his job, with or without accommodations.

20. In or about the spring of 2014, Look requested that Defendant accommodate his disability by allowing him to use a hand cart to support his leg, rather than carrying coin bags over his shoulder, causing instability and knee pain.

21. Defendant refused to allow Look to use a hand cart in lieu of carrying the coin bags over his shoulder.

22. In fact, Bill Wichelman ("Wichelman"), Look's direct supervisor, told Look that, if he used the hand cart, Look would be fired.

23. In or around May 2014, Wichelman, began making frequent comments about Look's age and questioning Look's ability to perform his job because of his age.

24. Two of Look's co-workers, Cliff Walker and Calvin Johnson, overheard a telephone call where Wichelman was on speaker phone making statements about Look's age. Both colleagues looked at Look and confirmed that they had heard this statement and that they would testify about this as witnesses if necessary.

25. Wichelman specifically said to Look, "Maybe you are getting too old to do this job or you just can't handle it."

26. In the summer of 2014, Look's knee condition worsened.

27. In July 2014, Look's doctor placed him on light duty work, and Look remained on light duty work, pursuant to his doctor's orders, until October 2014. During this period, Defendant accommodated the light duty requirement by assigning Look to the service department.

28. As a result of his knee injury, Look required a surgical total knee replacement in October 2014.

28. In August 2014, Look's orthopedic doctor ordered Look to attend a pre-surgery class that was recommended to all patients prior to undergoing knee replacement surgery.

29. In or about August 2014, Look informed Defendant that he was required to attend the pre-surgery class and requested time off to attend the class.

30. However, Defendant refused to allow Look time off to attend the class that was ordered by his doctor. As a result, Look missed the class ordered by his doctor to attend work.

31. From October 7, 2014 through December 29, 2014, Look required medical leave to undergo knee replacement surgery and to recover from the surgery.

32. Prior to taking medical leave, Look told Wichelman that he intended to take FMLA leave and requested FMLA paperwork from Wichelman.

33. Wichelman never provided Look FMLA paperwork.

34. Shortly thereafter, Look contacted Sharon Gallagher ("Gallagher") in Defendant's corporate office. Look spoke directly to Gallagher. Look told Gallagher that he intended to take FMLA leave and requested the FMLA paperwork.

35. Defendant never sent Look any FMLA documents.

36. Defendant never sent Look's doctor any FMLA documents.

37. On or about December 18, 2014, Look attended Defendant's holiday party, where he spoke to Wichelman and Ken Carroll ("Carroll"), Look's manager.

38. Both assured Look that he could return to work once he was released by his doctor to full duty.

39. In late December 2014, Look's doctor released Look to full duty work, without restrictions.

40. On December 30, 2014, Look showed up for work and provided his employer a copy of his doctor's note, releasing Look to full duty work.

41. At or about that same date and time, Carroll informed Look that his position had been filled.

42. At or about that same date and time, Carroll informed Look that Defendant did not have a position available for Look.

43. At or about that same date and time, Carroll informed Look that Carroll's brother had undergone a similar operation as Look and that Carroll's brother had not been able to return to full duty work. Carroll explained that, for this reason, Defendant had no work available for Look within the company.

44. Upon information and belief, Defendant replaced Look with a thirty-six year-old man who had no disability.

45. As a result of Defendant's actions, Look has suffered loss of income and loss of benefits, including health insurance.

46. As a result of Defendant's actions, Look has suffered severe emotional distress, humiliation, embarrassment, injury to his reputation, and anxiety.

47.     Defendant's decisions in the course of, and in the termination of, Look's employment were taken and implemented in willful, blatant, and intentional disregard of, and in violation of, Plaintiff's rights under the ADA, FMLA, and ADEA.

## COUNT ONE
## AMERICANS WITH DISABILITIES ACT OF 1990
## 42 U.S.C. §12101 et seq.
**Unlawful Discrimination**

48.     The foregoing allegations are incorporated as if re-alleged herein.

49.     All of the acts of Defendant's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of the Defendant.

50.     Plaintiff was a qualified individual with a disability as those terms are defined by the Americans with Disabilities Act.

51.     Throughout Plaintiff's employment with Defendant, Look's knee injury substantially limited one or more of his major life activities, including standing and walking.

52.     Despite Look's requests for accommodations, Defendant refused to allow Look to use a hand cart to support his knee. Instead, Defendant required Look to carry collection bags over his shoulder, affecting Look's gait and balance and aggravating his pain.

53.     From July 2014 until October 7, 2014, Look required light duty work.

54.     From October 7, through December 29, 2014, Look required medical leave to obtain knee surgery and recover from the surgery.

55.     Look was released to full duty work in late December 2014.

56.     Although Look was released to full duty work, Defendant informed Look that it no longer had a position for him within the company, stating that Defendant could

not maintain Look's employment because it knew of another individual who had undergone a similar surgery to Look's and that individual had not been able to return to full duty work.

57. On December 30, 2014, Defendant terminated Look's employment.

58. Defendant replaced Look with a non-disabled person.

59. Defendant discriminated against Look because of his actual and/or perceived disability.

60. Defendant's actions were done in willful violation of Plaintiff's rights under the Americans with Disabilities Act.

61. As a direct and proximate result of Defendant's actions, Plaintiff has suffered, continues to suffer, and will in the future suffer injury and damages, including embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense including attorneys' fees, medical expense, consequential damages and other injury.

## COUNT TWO
## FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. §2601
### Interference: Failure to Inform Plaintiff of his FMLA Rights and Wrongful Termination

62. The foregoing allegations are incorporated as if re-alleged herein.

63. All of the acts of the Defendant's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of the Defendant.

64. Throughout Look's employment with Defendant, Look's job performance met or exceeded Defendant's legitimate expectations.

65. Look's health condition for which he took medical leave and requested reasonable accommodation constituted a serious health condition within the meaning of the FMLA of which Defendant and its managers were aware.

66. Plaintiff was eligible for FMLA leave.

67. Defendant did not provide Plaintiff with notice that he was eligible for FMLA leave.

68. Defendant did not provide Plaintiff with notice of his rights and responsibilities under the FMLA.

69. When Look requested time off to take a class to which his doctor referred him and that is recommended for all knee replacement patients, Defendant failed to notify Look of his rights under the FMLA to take medical leave to take the course. Instead, Defendant refused Look time off to take the class ordered by his doctor.

70. Prior to October 7, 2014, Look requested that Defendant provide FMLA documents to Look and his doctor. However, Defendant failed to provide the FMLA documents, including notice of Look's rights and responsibilities under the FMLA.

71. Defendant terminated Plaintiff's employment after his return from medical leave to which he was entitled under the FMLA.

72. The acts and practices of Defendant and its managers complained of herein, including Defendant's failing to inform Plaintiff of his eligibility for FMLA leave and rights and responsibilities under the FMLA, were willful and interfered with, restrained and/or denied Plaintiff's exercise of his rights or his attempt to exercise his rights under the FMLA, in violation of 29 U.S.C. §§ 2615(a)(1) and (a)(2).

73. Plaintiff has been damaged by Defendant's actions, including, but not limited to loss of employment, compensation, and employment related benefits.

## COUNT THREE
## FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. §2601
### Interference by Failing to Properly Designate Leave as FMLA Leave and Wrongful Termination

74. The foregoing allegations are incorporated as if re-alleged herein.

75. All of the acts of Defendant's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of Defendant.

76. Throughout Look's employment with Defendant, Look's job performance met or exceeded Defendant's legitimate expectations.

77. Look's health condition for which he took medical leave constituted a serious health condition within the meaning of the FMLA of which Defendant and its managers were aware.

78. Look was eligible for FMLA leave.

79. In or about August 2014, Look informed Defendant that his doctor required him to take medical leave from work beginning October 7, 2014 to have knee replacement surgery and to recover from the surgery.

80. Look took medical leave to have knee replacement surgery and to recover from surgery from October 7, 2014 through December 29, 2014.

81. On or about December 18, 2014, Look was informed by Defendant that Look could return to work once he was released by his doctor to full duty.

82. In late December 2014, Look's doctor released Look to full duty work, without restrictions.

83. Upon providing his doctor's release to Defendant, Defendant informed Look that Defendant had replaced Look with a new employee. Further, Defendant told Look that it had no other positions available to him within the company.

84. Defendant had a legal duty to designate Look's time off from work as medical leave under the FMLA and to inform Plaintiff of his rights to take medical leave and be free from unlawful interference and/or retaliatory conduct by his supervisors.

85. Defendant did not designate as FMLA leave the time off that Look needed to have surgery and recuperate.

86. Defendant terminated Look's employment after his return from medical leave to which he was entitled under the FMLA.

87. The acts and practices of Defendant and its managers complained of herein, including Defendant's failure to designate Look's leave as intermittent leave protected by the FMLA, were willful and interfered with, restrained, and/or denied Look's exercise of his rights or his attempt to exercise his rights under the FMLA in violation of 29 U.S.C. §§ 2615(a)(1) and (a)(2).

88. Plaintiff has been damaged by Defendant's actions, including, but not limited to loss of employment, compensation, and employment related benefits.

## COUNT FOUR
## AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, 29 U.S.C. §621
### Unlawful Discrimination

89. The foregoing allegations are incorporated as if re-alleged herein.

90. All of the acts of Defendant's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of the Defendant.

91. Look became sixty years old in the summer of 2014.

92. In or around May 2014, Defendant began making frequent comments about Look's age, questioning Look's ability to perform his job because of his age.

93. Defendant specifically made statements, including language to the effect of, "Maybe you are too old to do this job or you just can't handle it."

94. On December 30, 2014, Defendant terminated Look's employment.

95. Defendant replaced Look with a twenty year-old man.

96. Defendant discriminated against Look because of his age.

97. Defendant's actions were done in willful violation of Plaintiff's rights under the ADEA.

98. As a direct and proximate result of Defendant's actions, Plaintiff has suffered, continues to suffer, and will in the future suffer injury and damages, including embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense including attorneys' fees, medical expense, consequential damages and other injury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Lynn Look, by counsel, requests that this Court:

A. Issue judgment declaring that the acts and practices complained of herein are violations and willful violations of the Americans with Disabilities Act, U.S.C. §12101, *et seq.*, the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615, *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq.*.;

B. Issue a mandatory injunction directing Defendant to reinstate Look to a position of equal duties and responsibilities as Look would have received but for the Defendant's conduct, with equal pay and benefits (retroactive to December 30, 2014), or, in the alternative, for an award of judgment for front pay and benefits under the ADA and ADEA;

C. Issue an award of back pay for violations of the ADA, FMLA, and ADEA;

D. Issue an award of liquidated damages in an amount to be determined at trial for willful violations of the FMLA;

E. Issue an award of compensatory damages in the amount of $300,000.00;

F. Issue an award of punitive damages in the amount of $300,000.00;

G. Issue an award in an amount sufficient to offset any adverse tax consequences resulting from a lump sum award or an award of other relief in this action because he was required to file suit to enforce his federally protected rights;

H. Issue any other appropriate injunctive relief;

I. Issue an award of reasonable prejudgment interest, attorneys' fees, and costs, including expert witness fees, of this suit;

J. Issue any other and further relief as this Court deems necessary and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted,

LYNN LOOK
By Counsel

_____
Blackwell N. Shelley, Jr. (VSB #28142)
Tim Schulte (VSB # 41881)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue

Richmond, VA 23220
(804) 644-9700
(804) 278-9634 [fax]
shelley@scs-work.com
schulte@scs-work.com
*Counsel for Plaintiff*